IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

YVES AUBERT,

                Petitioner,

v.                                        Case No: 24-cv-926-jdp

LAURIE LEE POAST,

                Respondent.

## PETITIONER'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

The Petitioner, Yves Aubert (the "Father"), by and through his undersigned counsel, respectfully files this Memorandum in Opposition to the Motion to Dismiss filed by the Respondent, Laurie Lee Poast (the "Mother"), and states as follows:

## I.    INTRODUCTION & BACKGROUND.

This Court has subject-matter jurisdiction over Hague Convention claims. The Father has standing to pursue his Hague Convention claims. The Father has plausibly pled the elements of his Hague Convention claims. The Mother's Motion to Dismiss conflates the merits of the case with jurisdiction. The motion should be denied, and the case should proceed to the evidentiary hearing in accordance with the Court's Scheduling Order.

The parties are the parents of two daughters, one born in 2013 and the other born in 2018. The children lived their entire lives in Norway. By operation of Norwegian law, the Father has rights of custody with respect to both children. He has joint parental authority and *ne exeat* rights of custody with respect to the older child; and he has *ne exeat* rights of custody with respect to the

1

younger child. A *ne exeat* right is a recognized right of custody under the Hague Convention. *Abbott v. Abbott,* 560 U.S. 1, 8 (2010).

Litigation has been pending in Norway between the parties relating to the children since January 2024. In May 2024, while the Norwegian litigation was pending, the Mother visited the United States with the children and then retained them in the United States ever since. The Father only agreed for the children to travel to the United States with the Mother for approximately two weeks, on roundtrip airline tickets from and back to Norway, for the Mother to visit family. The Mother never told the Father she was relocating the children to the United States. The Father never agreed for either child to be relocated outside Norway and retained in the United States. The Mother was to return the children home to Norway at the end of the visit to the United States. She never returned the children. Her retention of the children in the United States breaches the Father's rights of custody under Norwegian law with respect to both children.

## II.    HAGUE CONVENTION STANDARDS.

The Hague Convention was adopted to address and discourage exactly what the Mother has done here—international unilateral action by one parent. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 4-5 (2014). Through the adoption of the Hague Convention, the States Parties, including Norway and the United States, have sought "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, preamble; *see also* Hague Convention, art. 1; ICARA § 9001; *Abbott*, 560 U.S. at 8. The intention of the treaty is "to secure the prompt return of children wrongfully removed or retained in any Contracting State . . . to ensure that rights of custody and access under the law of one Contracting State are effectively respected in the other Contracting States." *Hernandez v. Cardoso,* 844 F.3d 692, 694 (7th Cir. 2016) (citing

*Abbott,* 560 U.S. at 7) (internal quotations omitted); *see also Martinez v. Cahue,* 826 F.3d 983, 989 (7th Cir. 2016). "To fulfill the latter purpose, it seeks 'to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction.'" *Martinez,* 826 F.3d at 989 (citing *Garcia v. Pinelo,* 808 F.3d 1158, 1162 (7th Cir. 2015)); (quoting *Walker v. Walker,* 701 F.3d 1110, 1116 (7th Cir. 2012)).

The primary purpose of the Hague Convention is to restore the pre-abduction status quo. *Garcia v. Pinelo,* 808 F.3d at 1162. "The Convention's central operating feature is the return remedy." *Abbott* 560 U.S. at 9. When there has been a wrongful [removal or] retention, the country to which the child has been removed generally must order the prompt return of the child. *Id.*

The scope of a court's inquiry under the Hague Convention is limited to the merits of the claim for wrongful removal or retention. Hague Convention, art. 16, 19; ICARA § 9001(b)(4). The merits of any underlying custody case are not at issue and cannot be considered. *See Walker*, 701 F.3d at 1119, 1124. The return remedy "lays venue for the ultimate custody determination in the child's country of habitual residence rather than the country to which the child is abducted." *Lozano*, 572 U.S. at 5.

The International Child Abduction Remedies Act ("ICARA") is the Convention's implementing legislation in the United States. It establishes straightforward procedures for the operation of the Hague Convention in the United States by defining and allocating burdens of proof for claims and discretionary exceptions under the Convention. ICARA § 9001 *et seq.* ICARA requires that a petitioner under the Hague Convention establish, by a preponderance of the evidence, that the child whose return is sought has been "wrongfully removed or retained within the meaning of the Convention." ICARA § 9003(e)(1)(A).

In order to establish a prima facie case of wrongful retention under the Convention and ICARA, the Father is to establish by a preponderance of the evidence that: (1) the habitual residence of the child at the time of the retention was Norway; (2) the retention breached the Father's article 5*a* rights of custody under Norwegian law; and (3) the Father was exercising rights of custody at the time of the retention or would have been so exercising his rights but for the retention. Convention, art. 3; *see also Redmond v. Redmond,* 724 F.3d 729, 737-38 (7th Cir. 2013). When the Father establishes by a preponderance of the evidence that the Mother's retention of the child was wrongful within the meaning of the Convention, the child's return is required forthwith pursuant to article 12 of the Convention, unless in its discretion the Court sustains one or more of the narrow discretionary exceptions to return.

The Motion to Dismiss does not challenge the Father's averments relating to habitual residence of either child; the Motion to Dismiss does not challenge the Father's averments relating to rights of custody or exercising rights of custody as to the older child. The only challenges the Motion to Dismiss makes to the Father's averments are on subject matter jurisdiction with respect to the younger child; and failure to state a claim with respect to the younger child. Both positions fail.

## III.    SUBJECT MATTER JURISDICTION.

The Mother does not challenge this Court's concurrent original subject-matter jurisdiction over actions arising under the Hague Convention.  (ECF No. 30); *see also* ICARA § 9003(a) ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention."). This Court has jurisdiction over Hague Convention claims—the only claims asserted in the Father's Petition.

The Mother's only argument is to challenge the Father's standing to seek relief as to the younger child (the Mother does not challenge standing as to the older child). The Mother conflates the subject-matter jurisdiction analysis with the merits of the Father's claim. The Father has standing to pursue his Hague Convention claim. He meets his burden on standing regardless of whether the Court considers the Motion to Dismiss to be a facial or factual attack. The Motion to Dismiss should be denied.

### A. Standing.

"At the pleading stage, it is normally not difficult to pass the standing bar. Plaintiffs need only clearly allege facts demonstrating each element." *Laurens v. Volvo Cars of North America, LLC*, 868 F.3d 622, 624 (7th Cir. 2017). General factual allegations of injury resulting from a defendant's conduct may suffice to establish standing at the pleading stage, because courts are to presume that general allegations embrace specific facts necessary to support the claim. *Bazile v. Finance System of Green Bay, Inc.,* 983 F.3d 274, 278 (7th Cir. 2020). In a facial challenge to standing, the allegations of fact "need only plausibly suggest each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor." *Id.* (citing *Silha v. ACT, Inc.,* 807 F.3d 169, 173-73 (7th Cir. 2015)). "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile,* 983 F.3d at 279. "A facial attack does not challenge the alleged facts themselves." *Id.*

A factual attack does challenge the alleged facts. *Id.* It tests the existence of jurisdictional facts underlying the allegations. *Id.* When a defendant raises a *factual* challenge to standing, the plaintiff must prove standing by a preponderance of the evidence. *Laurens*, 868 F.3d at 624; *see also Retired Chi. Police Ass'n v. City of Chicago,* 76 F.3d 856, 862 (7th Cir. 1996). "In that context,

the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Bazile,* 983 F.3d at 279.

Here the Mother challenges the Father's standing in a 12(b)(1) motion to dismiss. Her motion appears to be partially a facial attack and partially a factual attack. It does not clearly fall into one category or the other. The argument fails under either analysis.

### 1. Facial Attack Analysis.

Standing is the determination whether a specific person is the proper party to bring a matter to the court for adjudication. *Federal Jurisdiction,* §2.3.1 (Erwin Chemerinsky, 6th ed. 2012). The Father is the proper party here. The question of standing is whether the litigant, here the Father, is entitled to have the court decide the merits of the dispute or of the particular issues. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Father has pled the three constitutional standing requirements. *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

Firstly, the Father has alleged that he has suffered an injury. (ECF No. 1 ¶¶ 4, 9, 10, 11, 59-62, 92-93); *see also* § IV *infra* (the Father has plausibly pled his claims for wrongful retention, including rights of custody and exercising rights of custody to the younger child). Secondly, the Father has alleged that the injury is fairly traceable to the Mother's conduct. *Id.* Thirdly, the Father has alleged that a favorable federal court decision is likely to redress the injury—namely an order directing the return of the children to Norway. (ECF No. 1 at p. 12 at ¶¶ A-E). The Father therefore has plausibly pled each element of standing to bring this case under article 3 of the Hague Convention.

### 2. Factual Attack Analysis.

In the event the Mother's motion is considered a factual attack on standing and subject matter jurisdiction, the Father prevails. The entirety of the Mother's argument on standing is her

claim that the Father does not have rights of custody to the younger child and was not exercising rights of custody to the younger child. The Mother conflates standing with the merits of the Father's claim. Rights of custody and exercising rights of custody are elements of the merits of the Father's Hague Convention claim; they are not elements of standing. *See* § III.A.1 (setting forth the elements of standing).[1]

The Second Circuit recently examined the conflation of standing and the merits under the Hague Convention and ICARA in the context of a 12(b)(1) motion. *Tereshchenko v. Karimi,* 102 F.4th 111 (2d Cir. 2024) ("*Tereshchenko II*"). In the district court, the respondent sought dismissal of the petitioner's petition seeking the return of two children to Ukraine for lack of subject-matter jurisdiction. *Tereshchenko v. Karimi,* 2023 WL 8452224 (No. 23-cv-2006, S.D.N.Y. Dec. 6, 2023) ("*Tereshchenko I*"). The case had been filed pursuant to the Hague Convention and ICARA. *Id.* The respondent argued that the court lacked subject-matter jurisdiction. The lower court held that the respondent's arguments were related to elements of proof, not to the court's power to adjudicate the merits. *Tereshchenko II*, 102 F.4th at 126.

The Second Circuit affirmed the lower court's holdings on subject-matter jurisdiction in *Tereshchenko II* and set out the framework for subject-matter jurisdiction analysis. It explained that "[w]hen applying a treaty, a court must determine whether it has jurisdiction over the case by examining 'two levels of judicial power': treaty jurisdiction and domestic jurisdiction." *Tereshchenko II,* 102 F.4th at 125 (citations omitted). "Treaty jurisdiction is defined by the treaty's provisions themselves, which may delimit which nation-states' courts can hear a claim arising under the treaty." *Id.* The Second Circuit further explained that "[d]omestic jurisdiction is

---

[1] Even if rights of custody and exercising rights of custody had to be proven at this stage to establish standing, the Father meets this burden by the preponderance of the evidence, based upon the Second Affidavit of Norwegian Law (ECF No. 34), and which is fully analyzed in § IV *infra.*

governed by our usual rules—such as Article III and jurisdictional statutes—that specify whether a particular United States court has power to hear a case." *Id.*

The Hague Convention's treaty jurisdiction is set forth in "Articles 8 and 30 of the Convention, which together delimit which nation-states' courts can hear a claim arising under the treaty." *Id.* (citations omitted). Article 8 of the treaty provides that "a person (or other entity) claiming that a child has been [removed or] retained . . . may apply to *the Central Authority of the child's habitual residence* or to the *Central Authority of any other Contracting State* for assistance in securing the return of the child." *Id.* (citing Convention, art. 8) (emphasis in original). Article 30 provides that "the claimant may submit this application either to the Central Authorities themselves or directly to the judicial or administrative authorities of a Contracting State." *Id.* at 126. The Second Circuit tied the two provisions together in *Tereshchenko II* and concluded that "a court has treaty jurisdiction over a Hague Convention petition when (1) the child is habitually resident in a Contracting State with a Central Authority; and (2) the court is a judicial authority of a Contracting State." *Id.*

With respect to domestic jurisdiction, the *Tereshchenko II* Court explained that "a district court's jurisdiction is limited by Article III and any other applicable statutory requirements." *Id.* It further explained that in Hague Convention cases, the relevant domestic statute ". . . is ICARA, which provides in its jurisdictional provision that 'the courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.'" *Id.* (citing 22 U.S.C. § 9003(a) (entitled "Jurisdiction of courts.")). The Second Circuit noted that "[t]his appears to be ICARA's only jurisdictional limit, as no other provisions speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* The Second Circuit concluded by summarizing its explanation of the subject-matter jurisdiction analysis as

follows: "The treaty requires only that the children be habitually resident in a Contracting State . . . and that the court hearing the petition be one in a Contracting State. As for domestic law, the treaty explicitly authorizes the district court to hear the petition and nothing suggests the presence of other constitutional or statutory jurisdictional defects." *Id.*

The court concluded its analysis by explaining the difference between merits and jurisdiction. The respondent in *Tereshchenko I* had argued that because the petitioner allegedly consented to the children's removal (which is a defense to return under the Convention), the district court lacked jurisdiction. The court observed: "[a]s should be apparent, that argument has a false premise: consent (or lack of it) is not a jurisdictional requirement to a petition brought under the Convention." *Id.* It further reasoned that "[w]hile consent and wrongful removal bear on the *merits* of a petition under the Convention, those issues have nothing to do with jurisdiction, whether treaty or domestic." *Id.* (emphasis added). So here. Whether the Father can prove all of the elements of his prima facie case on the merits is not the same as averring or establishing jurisdiction.

The Mother conflates the subject-matter jurisdiction analysis with the merits, and argues that the Father does not prove the elements of his *prima facie* case with respect to the younger child. But that determination is a question on the merits of the claim. Whether the Father ultimately establishes the elements of his prima facie case is a separate question.

The task before the Court at this stage of the case is to determine whether the Petition's averments, along with the documents submitted in tandem, satisfy either the plausibility standard to plead the elements of standing in a facial attack, or the preponderance of the evidence standard to prove the elements of standing in a factual attack. The Father satisfies both tests. The Mother's Rule 12(b)(1) Motion to Dismiss should be denied.

IV.    **THE FATHER HAS PLAUSIBLY PLED RIGHTS OF CUSTODY & EXERCISING RIGHTS OF CUSTODY.**

A.    **Rule 12(b)(6) Standard.**

Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a complaint must only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012) (citing FED.R.CIV.P. 8(a)(2)). "The complaint will survive a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must ask itself *could* these things have happened, not *did* they happen." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.,* 804 F.3d 826, 833 (7th Cir. 2015) (internal quotations omitted). "The standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Id.* "All a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief." *Luna Vanegas v. Signet Builders, Inc.,* 46 F.4th 636, 645 (7th Cir. 2022). Indeed, a complaint "does not need to plead legal theories . . . does not need to plead facts corresponding to each element of a legal theory . . . and does not need to plead all the facts a plaintiff would need to produce to defeat a motion for summary judgment." *Gibson v. American Cyanamid Co.,* No. 07-C-0864, slip op. at 2, 2024 WL 4715265, *2 (E.D. Wis. Nov. 8, 2024) (cleaned up). It is sufficient to plead "a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.*

In ruling on a 12(b)(6) motion, "the court must also consider documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts are consistent with the pleadings." *Twin City Fire Company v. Law Office of John S. Xydakis, P.C.,* 407 F. Supp. 3d 771, 775 (N.D. Ill. 2019) (cleaned up) (citing *W.C. Motor Co. v. Talley,* 63 F. Supp. 3d 843, 846 (N.D. Ill. 2014) (quoting *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Additionally, "a party opposing a Rule12 (b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675 F.3d at 745, n. 1. (citing *Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (reversing dismissal; plaintiff is free to assert new facts in brief opposing motion to dismiss); *John Roe I v. Bridgestone Corp.,* 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate.")). Any such materials should not be used to convert the motion into a Rule 56 motion for summary judgment. *Geinosky*, 675 F.3d at 745, n. 1.

The facts alleged in the Father's Petition are more than sufficient to raise a right to state a claim to relief that is plausible on its face on the rights of custody and exercising rights of custody elements of the Father's prima facie case. Even if the averments in the Petition alone were not sufficient (which they are), the documents attached to and referenced in the Petition, the additional facts set forth in this brief, and the Affidavit submitted in tandem demonstrate that there is evidentiary weight behind the pleadings and weigh against dismissal.

**B. Rights of Custody Standard and Averments.**

The Convention provides that "[t]he removal or retention of a child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal."  Convention, art. 3(a).  Rights of custody are to be construed broadly to include the widest possible range of ways in which a parent may have rights to a child, which allows the greatest possible number of cases to be brought into consideration. *Palencia v. Perez*, 921 F.3d 1333, 1338-39 (11th Cir. 2019) (citing *Hanley v. Roy*, 485 F.3d 641, 645 (11th Cir. 2007)); *see also Abbott*, 560 U.S. at 10 (holding that a statutory *ne exeat* right constitutes a right of custody).

Under the Convention, rights of custody include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention, art. 5. "The violation of a *single* custody right suffices to make removal wrongful." *Palencia*, 921 F.3d at 647 (emphasis in original and citations omitted). A statutory *ne exeat* right is an article *5a* right of custody. *Abbott*, 560 U.S. at 9-10; *see also Palencia*, 921 F.3d at 647.

Whether the Father has parental responsibility for the younger child is irrelevant. A *ne exeat* right alone is more than enough to establish rights of custody and carry the day. The Mother's argument that the Father has conceded he does not have rights of custody because he does not yet have parental responsibility for the younger child does not carry the day. It does not matter that the Father is currently without parental responsibility for the younger child for purposes of pleading (and later establishing) article *5a* rights of custody.

The Father has averred in the Petition that he has statutory *ne exeat* rights to the younger child under Norway's The Children's Act. (ECF No. 1 ¶¶ 85-92). The Father also attaches to the Petition the first Affidavit of Norwegian Law (ECF No. 1-2) and copies of the relevant sections of

The Children's Act in Norwegian and English (ECF No. 1-1). The first Affidavit of Norwegian Law and the statutory provisions set forth in further detail the Father's *ne exeat* rights to the younger child. (ECF Nos. 1-1, 1-2).

In accordance with the Seventh Circuit jurisprudence set forth above, the Father has filed his Second Affidavit of Norwegian Law in tandem with this brief opposing the motion to dismiss. (ECF No. 34). The Second Affidavit of Norwegian Law lays out the Norwegian law the Father expects to prove, and demonstrates there is likely to be evidentiary weight behind the Father's pleading as to rights of custody with respect to the younger child.

In the Second Affidavit of Norwegian Law, affiant Norwegian attorney Halvor Frihagen elaborates on the averments in the Father's Petition, setting forth further details on the Father's rights of custody under Norwegian law, all of which are consistent with the averments of the Petition and the Norwegian statute attached to the Petition.

Mr. Frihagen explains that the Father has statutory *ne exeat* rights with respect to the younger child. (ECF No. 34 ¶ 6). The Children's Act applies in Norway and is the statutory law used to determined parents' rights of custody to their children under Norwegian law. *Id.* at ¶ 8. The Children's Act regulates the legal relationship between children and parents, including *inter alia*, parental responsibility rights, *ne exeat* rights, parent-child access[2] rights, mediation requirements, and dispute resolution mechanisms. *Id.* The Children's Act was enacted in 1981 and entered into force on January 1, 1982. *Id.* at ¶ 9. The Children's Act has been amended from time to time by the Norwegian legislature since it first entered into force. *Id.* The version of The Children's Act that was in effect at the time of a child's birth governs whether a parent has parental

---

[2] Access is the term used in the Norwegian statute for time allocation between the parents. The Father is not using the term "access" in relation to Article 21 access under the Hague Convention.

responsibility rights for the child by operation of law. *Id.* at ¶ 10. Any later amendments to The Children's Act relating to whether a parent has parental responsibility rights for a child by operation of law are not retroactive if the child was born prior to any such amendment. *Id.*

Section 35 of The Children Act determines parental responsibility by operation of law when the parents are not married. *Id.* at ¶ 11. The parties here are not now and never have been married to each other. *Id.* at ¶ 7. The January 1, 2008 version of § 35 of The Children's Act was in effect at the time of the birth of both children in this case. *Id.* at ¶ 11. In all other respects— including the definition of parental responsibility, the establishment of other rights to children (including *ne exeat* rights), parent-child access rights, mediation requirements, and dispute resolution mechanisms—the most current version of The Children's Act applies. *Id.* at ¶ 12.

Sections 31, 40, 42*a*, 46, and 51 of The Children Act are the relevant sections of the Norwegian law that address the Father's rights of custody to the younger child under Norwegian law, separate from any parental responsibility rights. *Id.* at ¶ 13. The Father has rights of custody to the younger child under Norwegian law. *Id.* at ¶ 26. He had those rights on the date of the alleged retention of the younger child in the United States and he continues to have those rights today. *Id.* The Father's rights of custody to the younger child include statutory *ne exeat* rights with respect to the younger child. *Id.*

The younger child was born in 2018. *Id.* at ¶ 27. At the time of her birth in 2018, the parents were no longer registered as living at the same address in Norway. But the Father is registered as the younger child's father on her birth certificate. *Id.*

The Father has a joint right to decide the younger child's country of residence in accordance with The Children's Act §§ 40, 42a, 46, and 51. *Id.* at ¶ 28. Under Norwegian law, the Father has a statutory *ne exeat* right as to the younger child, which provides him with the shared right to

determine her country of residence. *Id.*; *see also* Ex. B to Second Aff. of Norwegian Law, The Child's Act §§ 40, 42a, 46, and 51 (ECF No. 34-2). Under Norwegian law, neither parent can unilaterally establish the younger child's residence outside Norway. *Id.* The Father holds this statutory *ne exeat* right as to the younger child even though he does not currently have joint parental responsibility for her under Norwegian law. *Id.*

The version of The Children's Act that was in effect at the time of the younger child's birth in 2018 provides that the Mother has sole parental responsibility for the younger child because the parents were not registered as living together at the time of her birth. *Id.* at ¶ 30; Ex. B (ECF No. 34-2). There are statutory limitations, however, on the Mother's parental responsibility rights for the younger child; in particular, the Father's statutory *ne exeat* right under Norwegian law. *Id.* at ¶ 31.

The Father filed a family law case in the appropriate court in Norway seeking orders relating to various additional rights to the younger child under Norwegian law. *Id.* at ¶; *see also* ECF No. 1 ¶ 51. In the Norwegian case, the Father seeks for the court to resolve the parties' disagreement with respect parental responsibility for the younger child, custody (which in Norway means the child's daily care) and access with the younger child. (ECF No. 34 ¶ 32). At the time the Father initiated his case in Norway, international relocation was not raised as an issue because the Mother had not informed the Father that she had any plan to relocate the children outside Norway. *Id.*

The Norwegian court held a proceeding on February 26, 2024. *Id.* at ¶ 33. At the proceeding, in the Norwegian court, the parties agreed to a specific schedule of access for both children with the Father between the February 26, 2024 court appearance, and the date of the next

court appearance in the Norwegian court, which was scheduled for May 31, 2024. *Id.*; *see also* ECF No. 1 ¶¶ 52-53.

The Children's Act § 40 provides that "[i]f the parents disagree as to who shall have parental responsibility, or on international relocation or custody, the child *must not relocate until the matter has been decided*." ECF No. 34 ¶ 34; Ex. B (ECF No. 34-2) (emphasis added).

The Children's Act § 42a (which is contained in Chapter 6 of The Children's Act and addresses the rights of parents who have access to their children) provides that if one of the parents intends to relocate [a child] within Norway or abroad, and access has been determined by agreement or decision, the parent who intends to move shall notify the other parent at least three months prior to relocation. ECF No. 34 ¶ 34; Ex. B (ECF No. 34-2). If the parents disagree regarding relocation, the parent who intends to relocate with the child must request mediation in accordance with § 51 of The Children's Act. *Id.*

The Children's Act § 51 requires that parents with children of the relationship under the age of 16 must attend mediation before bringing an action in the Norwegian courts regarding parental responsibility, international relocation with the child, or access. ECF No. 34 ¶ 36; Ex. B (ECF No. 34-2). The same section further provides that parents who disagree regarding a child's relocation must attend mediation. *Id.*

The Children's Act § 46 provides that any person who has rights of access to a child shall, as far as possible, be allowed to express an opinion before the parent who has parental responsibility takes decisions that will make it impossible or considerably more difficult to exercise rights of access to the child. ECF No. 34 ¶ 37; Ex. B (ECF No. 34-2).

The Children's Act §§ 40, 42a, 46, and 51 provide the Father (as a parent and a person with access to the younger child) with the joint right to decide the child's country of residence in the

form of a statutory *ne exeat* right as to the younger child under Norwegian law. Under Norwegian law, neither parent shall unilaterally establish the younger child's residence outside Norway. ECF No. 34 ¶ 38; Ex. B (ECF No. 34-2).

The purpose of the provisions contained in §§ 40, 42a, 46, and 51 of The Children's Act is provide the mechanism for the non-relocating parent to invoke their right to prevent the child's relocation outside Norway, and for the parent who wishes to relocate to seek a court order permitting the relocation if the non-relocating parent does not consent. ECF No. 34 ¶ 39; Ex. B (ECF No. 34-2). The Father has never consented or agreed for the younger child to relocate to the United States of America. (ECF No. 1 ¶ 94).

The parents disagreed on all issues of parental responsibility, international relocation, and custody at the time the Mother left Norway with the children and then retained the children in the United States. (ECF No. 34 ¶ 42). The Father's case in the Norwegian court (which did not include relocation because the Mother had not disclosed her intent to relocate) was pending at the time the Mother retained the children, and remains pending as of the date of this brief. *Id*. By retaining the children in the United States, the Mother relocated the younger child outside of Norway in breach of the Father's *ne exeat* right contained in § 40 of The Children Act. *Id*.

The Mother did not notify the Father of her intent to relocate the younger child to the United States from Norway in accordance with The Children's Act § 42a. (ECF No. 34 ¶ 43; ECF No. 1 ¶ 90).  The Mother never requested mediation to address her proposed relocation of the younger child to the United States from Norway in accordance with § 51 of The Children's Act.  (ECF No. 34 ¶ 43). Because the Mother failed to comply with §§ 42a or 51 of The Children's Act, the Father was not able to act on his statutory *ne exeat* rights under §§ 42a or 46 or 51 of The Children's Act before the Mother relocated the younger child outside of Norway by retaining her in the United

States. *Id.* Finally, the Mother did not obtain a court order from the Norwegian court permitting the relocation of the younger child outside of Norway without the consent of the Father. *Id.*

The Father has therefore plausibly pled the rights of custody element to his claim for return of the younger child. He has plausibly pled that the Mother's retention of the younger child in the United States from Norway breached his rights of custody under Norwegian law by violating his statutory *ne exeat* rights, preventing him from acting on his *ne exeat* rights, and by making a unilateral relocation decision that makes it impossible or considerably more difficult to exercise rights of access to the younger child.

Interpretation of the foreign law asserted by the Father is a question to be resolved at the evidentiary hearing at which the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Radu v. Shon,* 62 F.4th 1165, 1173 (9th Cir. 2023) (citing Fed. R. Civ. P. 44.1). The Father has plausibly pled rights of custody. The Second Affidavit of Norwegian Law illustrates the Norwegian law the Father expects to prove and demonstrates there is likely to be evidentiary weight behind the Father's pleading as to rights of custody to the younger child. The Motion to Dismiss should be denied.

### C. Exercising Rights of Custody Averments.

The Father plausibly pleads the final element of his *prima facie* case: that at the time of the retention, he was exercising rights of custody, or would have been so exercising those rights but for the retention. Convention, arts. 3, 5. "The standard for finding that a parent was exercising his custody rights is a liberal one." *Baz v. Patterson,* 100 F.4th 854, 871 (7th Cir. 2024) (quoting *Walker,* 701 F.3d at 1121). A parent "cannot fail to exercise [his] custody rights under the Hague

Convention short of acts that constitute clear and unequivocal abandonment of the child." *Baz,* 100 F.4th at 871 (quotations omitted).

The Father avers that at the time of the retention he was exercising his rights of custody (or would have been so exercising but for the retention) by: (A) seeking mediation intervention when the Mother prevented the Father's contact with the children starting on or about March 14, 2023 (ECF No. 1 ¶¶ 42-47); (B) initiating proceedings in the appropriate court in Norway to address the issues between the parties relating to the children (ECF No. 1 ¶ 51); (C) appearing in the Norwegian court and entering into a temporary agreement with the Mother for access with the children during the pendency of the Norwegian case (ECF No. 1 ¶¶ 52-53); (D) agreeing for the children to travel on roundtrip airline tickets for a visit to the United States with the Mother from May 6-20, 2024 (ECF No. 1 ¶ 57-58); (E) continuing to pursue his claims relating to the children in the court in Norway after the Mother retained the children in the United States (ECF No. 1 ¶ 61); and (F) pursuing the return of the children to Norway (ECF No. 1 ¶¶ 95-96). In addition, the Father avers that he has always exercised rights of custody to both children, from the time of each child's birth until the Mother began interfering with the Father's exercise of his rights in 2023, by participating in the children's lives in Norway on a daily basis; participating in the children's daily activities; transporting the children to and from school daily; taking the children to their extracurricular activities; preparing the children's meals; and helping the children with their homework, bedtime, and bathtime routines. (ECF No. 1 ¶¶ 29-33).

Here, the facts alleged in the Father's Petition as to each element of his *prima facie* case, which must be assumed to be true, are plausibly pled to state a claim for return of the children to their habitual residence of Norway. The Mother's 12(b)(6) motion should therefore be denied.

## V.    ARTICLE 12 RETURN IS MANDATORY, NOT DISCRETIONARY.

The Convention is a text-based treaty. *Abbott*, 560 U.S. at 12. Its "central operating feature is the return remedy." *Id.* at 9. When there has been a wrongful retention, the country in which the child has been must order the prompt return of the child. *Id.*; *see also* Convention, art. 12. The text of article 12 is mandatory and provides:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned *shall order* the return of the child forthwith.

Convention, art. 12.

The text of the Convention does not permit a court to refuse to return a child to the child's habitual residence when a petitioner establishes a *prima facie* case for return, and a respondent does not prove any exceptions. Return under article 12 is mandatory, not discretionary.

*Leonard v. Lentz*, advanced by the Mother, does not stand for the proposition that the article 12 return remedy is discretionary. *Leonard,* 297 F. Supp. 3d 874, 890-901 (N.D. Iowa 2017). In *Leonard*, the district court in Iowa held that the petitioner had not proved his *prima facie* case by a preponderance of the evidence for any of the three siblings. *Id.* at 890. Article 12 therefore did not require the return of any of the children. *Id.* The court then explained in *dicta* that if the petitioner *had* proven his prima facie case, the court would have found that the respondent had established the grave risk discretionary exception to return as to one child because the child required a kidney transplant in the United States. *Id.* Based on the grave risk findings as to the one sibling, the district court would have declined to return all three children. *Id*. But none of the children in that case would have been returned anyway because the petitioner did not prove his *prima facie* case for return. *Id*. *Leonard* is inapposite to the Court's analysis.

Federal courts have long recognized the mandatory nature of article 12 returns, often in the context of analyzing abstention claims. In *Silverman v. Silverman*, the Eighth Circuit reverse the dismissal of a Hague Convention petition on abstention grounds, explaining that "federal courts have the power to dismiss or remand based on abstention principles *only where the relief sought is equitable or otherwise discretionary*. That is not the sort of remedy sought here." *Silverman*, 338 F.3d 886, 894 (8th Cir. 2003) (emphasis added). It emphasized the mandate of article 12 and concluded that "[i]n the absence of discretion with respect to relief, abstention principles do not permit an outright dismissal of a Hague petition." *Id.* Likewise, the Eastern District of Texas recently reached the same conclusion in the abstention context, recognizing that abstention does not apply because the relief available under the Convention is mandatory, not discretionary. *Moreau v. White*, No. 4:24-cv-00857, slip op. at 5, 2024 WL 5315404 at *5 (E.D. Tex. Nov. 22, 2024).

The only discretion a court has in a Hague Convention case is in the inverse—courts may exercise their discretion to return a child even if an exception is proven. The Convention's exceptions are discretionary; article 12 returns are not. Keeping siblings together is not a basis under the Convention to dismiss a claim or to refuse to return one child for whom a wrongful retention case was proven, and an exception was not.

Indeed, article 18 of the Convention provides that "[t]he provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time." Article 18 is grounded in principles of equity. *See Alcala v. Hernandez*, 826 F. 3d 161 (4th Cir. 2016). A court retains plenary power to order a child's return at any time even if one of the narrow exceptions is proven. Convention, art. 18; 51 Fed. Reg. 10,494, 10,509 (1988) (legal analysis of the Hague Convention by the U.S. Department of State explaining that the court retains the

discretion to return a child even if one of the defenses applies). In *Alcala*, the Fourth Circuit recognized the plenary power to order a child's return under equitable considerations but declined to invoke it because of a lack of inequitable conduct. *Alcala*, 826 F. 3d at 174. The First, Third, and Tenth Circuits agree, each recognizing that courts have plenary power to return children, even if an exception is proven, particularly where the return would further the aims of the Convention. *See Yaman v. Yaman*, 730 F. 3d 1, 19-20 (1st Cir. 2013); *see also Yang v. Tsui*, 499 F.3d 259, 278 (3d Cir. 2007) (quoting *de Silva v. Pitts*, 481 F.3d 1279, 1285 (10th Cir. 2007)).

Dismissing the case in its entirety or refusing to return one child if a *prima facie* case is not established for both children achieves the opposite of the goal of the Convention and is not supported by the Convention's text. The Motion to Dismiss should be denied.

## VI.    CONCLUSION

The Father's Hague Convention case is properly before this Court. There is no basis to dismiss the Father's case under Rule 12(b)(1), 12(b)(6), or on any purported discretionary basis. This Circuit's jurisprudence requires that this case be adjudicated on the merits. The Father respectfully requests that the Mother's Motion to Dismiss be denied, and that this matter proceed to the expedited evidentiary hearing. If the Court determines that any averments are lacking, which the Father submits they are not, leave to amend should be granted.

/s/ Kelly A. Powers
Stephen J. Cullen
Kelly A. Powers
Miles & Stockbridge P.C.
1201 Pennsylvania Ave., N.W., Suite 900
Washington, D.C. 20004
(202) 465-8374
(410) 773-9100 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of February, 2025, a copy of the foregoing Memorandum in Opposition to Motion to Dismiss was filed and served upon all counsel of record via CM/ECF.

/s/ Kelly A. Powers
Kelly A. Powers